UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>*Plaintiff/Petitioner,*<br><br>v.<br><br>DANIEL J. MACKLE, SR. and SILVER EDGE FINANCIAL, LLC,<br><br>*Defendants/Respondents* | Docket No.: 7:24-mc-489 (PMH) |

OPPOSITION OF DANIEL J. MACKLE, SR. TO APPLICATION OF SECURITIES AND EXCHANGE COMMISSION ENFORCING COMPLIANCE WITH COMMISSION ORDER

WARSHAW BURSTEIN, LLP
575 Lexington Avenue
New York, New York 10022
(212) 984-7741
msiegel@wbny.com

TABLE OF CONTENTS

## Table of Contents

PRELIMINARY STATEMENT ........................................................ 2
FACTS ........................................................ 3
ARGUMENT ........................................................ 6
POINT I ........................................................ 6
THIS COURT SHOULD EXAMINE THE MERITS OF THE REQUESTED COURT ORDER AND SHOULD NOT RUBBER STAMP THE SEC'S APPLICATION ........................................................ 6
POINT II ........................................................ 13
THE SEC HAS NOT SHOWN AN ENTITLEMENT TO AN INJUNCTION AGAINST MACKLE ........ 13
POINT III ........................................................ 17
THIS COURT SHOULD NOT ORDER DISGORGEMENT IN AMOUNT AND MANNER CONTRARY TO LIU ........................................................ 17
POINT IV ........................................................ 21
THIS COURT SHOULD NOT ORDER MACKLE TO PAY CIVIL PENALTIES ORDERED AS A RESULT OF THE SEC ADMINISTRATIVE PROCEEDING ........................................................ 21
CONCLUSION ........................................................ 24

# TABLE OF AUTHORITIES

Page(s)

Cases

*Agostini v. Felton*,
521 U.S. 203 (1997) ... 10

*Batalla Vidal v. Mayorkas*,
618 F. Supp. 3d 119 (E.D.N.Y. 2022) ... 9

*Berger v. Heckler*,
771 F.2d 1556 (2d Cir.1985) ... 8

*Cochran v. SEC*,
20 F.4th 194 (5th Cir. 2021) ... 8, 9

*Colo. River Water Conservation Dist. V. United States*,
424 U.S. 800 (1976) ... 8

*Cooper v. Texas Alcoholic Beverage Comm'n*,
820 F.3d 730 (5th Cir. 2016) ... 10

*DeHuff v. Digital Ally, Inc.*,
No. 3:08 CV 327 TSL-JCS, 2009 WL 4908581 (S.D. Miss. 2009) ... 15

*Elgebaly v. Garland*,
109 F.4th 426 (6th Cir. 2024) ... 21

*Free Enterprise Fund v. Pub. Account. Oversight Bd.*,
561 U.S. 477 (2010) ... 8

*Frillz, Inc. v. Lader*,
925 F. Supp. 83 (D. Mass. 1996) ... 11

*Hughley v. JMS Dev. Corp.*,
78 F.3d 1523 (11th Cir. 1996) ... 16

*Kokesh v. SEC*,
581 U.S. 455 (2017) ... 13

*League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*,
659 F.3d 421 (5th Cir. 2011) ... 10

Liu v. SEC,
591 U.S. 71 (2020) ........ *passim*

Mata v. Lynch,
576 U.S. 143 (2015) ........ 8

N.Y. States Ass'n of Retarded Children, Inc v. Carey,
706 F.2d 956 (2d Cir. 1983) ........ 9

Nat'l Revenue Corp. v. Violet,
807 F.2d 285 (1st Cir. 1986) ........ 11

Nexstar Media, Inc. Grp. v. NLRB,
No. 4:12-cv-01415, 2024 WL 4127090 (N.D. Ohio 2024) ........ 22

NML Capital Ltd v. Republic of Argentina,
No. 15-cv-2369 (TPG), 2016 WL 715732 (S.D.N.Y. Feb. 19, 2016) ........ 9

Quackenbush v. Allstate Ins. Co.,
517 U.S. 706 (1996) ........ 8

Rufo v. Inmates of Suffolk Cnty Jail,
502 U.S. 367 (1992) ........ 10

SEC v. Ahmed,
72 F.4th 379 (2d Cir. 2023) ........ 17, 18

SEC v. Benger,
697 F. Supp. 2d 932 (N.D. Ill.2010) ........ 16

SEC v. Caledonian Bank,
317 F.R.D. 358 (S.D.N.Y. 2016) ........ 6

SEC v. Carebourn Capital, LLC
21-cv-2114 (KMM/JFD), 2024 WL 424956 (D.Minn. Sept. 20, 2024) ........ 16, 23, 24

SEC v. Citigroup Global Mkts., Inc.,
752 F.3rd 285 (2d Cir. 2014) ........ 6, 8

SEC v. Cohen,
332 F. Supp. 3d 575 (E.D.N.Y. 2018) ........ 17

SEC v. Coronati,
16-cv-2022(ARR), 2016 WL 6462240 (E.D.N.Y. Oct. 14, 2016) ........ 12, 19

SEC v. Craig Scott Capital LLC,
16-cv-4757 (SJF)(AYS), 2020 WL 435 (E.D.N.Y. Jan. 28, 2020) ........ 12

_SEC v. Gentile_,
939 F.3d 549 (3d Cir. 2019) ........ 6, 14

_SEC v. Gerasimowicz_,
9 F. Supp. 3d 378 (S.D.N.Y. 2014)........ 6

_SEC v. Goble_,
682 F.3d 934 (11th Cir. 2012) ........ 16, 17

_SEC v. Govil_,
86 F.4th 89 (2d Cir. 2023) ........ 7, 17, 18, 19

_SEC v. Hansen,_
83 civ. 3692,1983 WL 2413 (S.D.N.Y. Apr. 6, 1984) ........ 16

_SEC v. Herman's World of Sports, Inc._,
05-cv-00438 (KAM)(RLM), 2024 WL 490 (EDNY 2014) ........ 18, 19

_SEC v. Hohol_,
No. 14-C-41, 2014 WL 461217 (E.D. Wis. Feb. 5, 2014) ........ 16, 21, 24

_SEC v. Hold Bros. On-Line Inv. Servs., LLC_,
216 F. Supp. 3d 425 (D.N.J. 2016)........ 12

_SEC v. Jarkesy_,
603 U.S. 109 (2024) ........ _passim_

_SEC v. Kramer_,
778 F. Supp. 2d 1320 (M.D. Fla. 2011)........ 15, 16

_SEC v. Laura_,
No. 18-cv-5075 (NGG) (VMS), 2020 WL 8772252 (E.D.N.Y. Dec. 30, 2020) ........ 18

_SEC v. M&A West, Inc.,_
No. C-01-3376 VRW, 2005 WL 151401 (N.D. Cal. 2005)........ 16

_SEC v. Miller_,
495 F. Supp. 465 (S.D.N.Y. 1980)........ 13

_SEC v. Morningstar Credit Ratings, LLC_,
578 F. Supp. 3d 563 (S.D.N.Y. 2022)........ 13, 15

_SEC v. Rajaratnam_,
918 F.3d 36 (2d Cir. 2019) ........ 23

_SEC v. Ripple Labs, Inc._,
No. 20 CIV. 10832 (AT), 2024 WL 3730403 (S.D.N.Y. Aug. 7, 2024) ........................ 19, 23, 24

_SEC v. Smyth_,
420 F.3d 1225, 1233 n.14 (11th Cir. 2005) ................................................................... 14

_SEC v. Taber_,
No. 13 Misc. 282 (KBF), 2013 WL 6334375 at *2 (S.D.N.Y. 2013)......................................... 6

_SEC v. Wellshire Securities, Inc._,
773 F. Supp. 569 (S.D.N.Y. 1991)................................................................................ 13

_SEC v. Wheeler_,
56 F. Supp. 3d 241 (W.D.N.Y. 2014) ............................................................................ 13

_Sys. Fed'n v. Wright_,
364 U.S. 642 (1961) ......................................................................................................11

_Total Med. Mgmt. v. U.S._,
104 F.3d 1314 (Fed. Cir. 1997) .......................................................................................11

_United States v. Swift & Co._,
286 U.S. 106 (1932) ................................................................................................. 9, 10

Statutes

15 U.S.C. § 77t(d)(2)(b)................................................................................................. 23

15 U.S.C. §§ 78u(d)(1), (5) and (7) ................................................................. 13, 14, 17, 18

28 U.S.C. § 1331 ............................................................................................................. 8

Rules

Federal Rules of Civil Procedure 60(b) ....................................................................... 9, 10

Regulations

17 C.F.R. § 201.240(c)(4)(v)............................................................................................. 9

Other Authorities

SEC Enforcement Activity: Public Companies and Subsidiaries,
Fiscal Year 2024 Update ................................................................................................. 9

Wall Street Journal, December 31, 2024............................................................................. 9



{1754317.1 }

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>*Plaintiff/Petitioner,*<br><br>v.<br><br>DANIEL J. MACKLE, SR. and SILVER EDGE FINANCIAL, LLC,<br><br>*Defendants/Respondents* | Docket No.: 7:24-mc-489 (PMH) |

OPPOSITION OF DANIEL J. MACKLE, SR. TO APPLICATION OF SECURITIES AND EXCHANGE COMMISSION ENFORCING COMPLIANCE WITH COMMISSION ORDER

Respondent Daniel J. Mackle, Sr. ("Mackle"), through his undersigned counsel, Warshaw Burstein, LLP, hereby submits this Opposition to the Application (the "SEC Application") of the Securities and Exchange Commission ("SEC") for an Order from this Court, pursuant to Section 21(e) of the Securities Exchange Act of 1934 ("Exchange Act") and Section 209 (d) of the Investment Advisors Act of 1940 ("Advisors Act") enforcing compliance with an Order issued by the SEC, dated March 20, 2023, as a result of an SEC administrative proceeding against Mackle and Silver Edge Financial, LLC ("Silver Edge") (the "Administrative Order")[1]. As will be shown herein, the SEC's Application should be denied in certain material respects with respect to Mackle.

[1] This Opposition is submitted by Mackle only. Silver Edge has signed a Consent to have this Court enter the Order requested by the SEC entered against it only, on the condition that any judgment entered is not joint and several and does not affect Mackle's rights to object to the SEC's Application. It is anticipated that the SEC has submitted, or will soon submit, the executed Consent and proposed Final Judgment against Silver Edge only.



{1754317.1 }

## PRELIMINARY STATEMENT

In the SEC Application, the SEC argues that a Section 21(e) proceeding is summary in nature and therefore, in effect, the Court should "rubber stamp" its Application. That is just wrong. The SEC'S Application is asking this Court to issue an Order of the Court based solely on the Administrative Order. Before this Court issues its own order, this Court has the jurisdiction, indeed the obligation, to review the merits of the relief sought by the SEC and determine if such relief is consistent with current law. Once the Court does so, it should determine that, in at least the three major aspects objected to by Mackle below, the SEC's Application is deficient.

In order for the Court to issue an order granting the SEC's Application based solely on the relief imposed by the SEC in the Administrative Order only, the SEC would have to have this Court perform a feat of alchemy by ignoring the requirements of the SEC's statutory authority to obtain an injunction and current law with respect to the requirements for the SEC to obtain disgorgement and civil penalties in an enforcement proceeding.

First, the statutory authority for the SEC to obtain an injunction arises from Section 27 of the Exchange Act. That provision requires a showing that the defendant is violating or is about to violate the securities laws. The SEC has not made any such showing with respect to Mackle. Without such a showing, there is no basis for a finding of a likelihood of future violations by Mackle, a requirement for the issuance of an injunction. The SEC cannot rely on the cease and desist restrictions in the Administrative Order because the SEC did not have the same requirements when it issued its cease and desist order as this Court will have when it considers whether to issue an injunction.



{1754317.1 }

The SEC's request to have this Court compel Mackle to pay disgorgement of $2,251,131.92, plus $268,928.33 in interest, is contrary to current law as established by *Liu v. SEC*, 591 U.S. 71 (2020). In *Liu*, the Supreme Court set forth certain equitable limitations on the SEC's power to obtain disgorgement in enforcement cases. The SEC Application violates all of those equitable principles. The SEC seeks to have any disgorgement from Mackle paid to the U.S. Treasury, not to investors in the Silver Edge Funds. Yet, the same Administrative Order that the SEC seeks to enforce required the appointment of an independent distribution consultant to liquidate and distribute the assets of the Silver Edge Funds to the investors. Therefore, in this case, a distribution to investors is not only feasible but mandatory. Moreover, the amount of disgorgement sought by the SEC from Mackle is based on an improper joint and several liability finding, and not based on moneys received directly by Mackle or "net profits".

Further, the civil penalties of $975,000 sought by the SEC are barred by *SEC v. Jarkesy*, 603 U.S. 109 (2024). In *Jarkesy*, the Supreme Court ruled that SEC administrative proceedings in which civil penalties are the ultimate remedy sought violated a respondent's right to a jury trial. *Jarkesy* prohibits the SEC from relying on the Administrative Order to seek civil penalties against Mackle.

In sum, with respect to the three aspects of the SEC's application, *i.e.*, injunction, disgorgement and civil penalties, the Court should deny the relief requested.

## FACTS

The facts relevant to this Objection are set forth in the Affidavit of Daniel J. Mackle, dated January 14, 2025, and in the Administrative Order attached to the SEC's Application.

The essential allegations set forth in the Administrative Order, at p.2, are as follows:

> "This proceeding arises out of Respondent's sale of membership interests in two pooled investment vehicles – the Silver Edge Pre-IPO Fund LLC and the Silver Edge Venture Fund LLC (the "Silver Edge Funds") – that were formed to invest in pre-IPO securities. Since January 2019, Silver Edge and its CEO, Daniel Mackle, procured interests in the Silver Edge Funds. Silver Edge is the Manager of the Silver Edge Funds and Mackle was the sole member of Silver Edge."

As a result of this activity, the SEC concluded that Silver Edge and Mackle were acting as unregistered brokers in violation of Section 15(a) of the Exchange Act. Significantly, there was no allegation or finding of fraud on the part of Mackle or Silver Edge.

As is common in SEC enforcement matters, Silver Edge and Mackle consented, without admitting or denying the SEC's allegations, to the Administrative Order concurrently with the initiation of the administrative proceeding. (Mackle Aff. ⁋ 5; Administrative Order at ⁋ 12.)

The Administrative Order subjected Mackle and Silver Edge to certain financial penalties. First, both Silver Edge and Mackle, jointly and severally, were directed to disgorge $2,251,131.92, plus prejudgment interest of $268,928.33, to the SEC for transfer to the general fund of the United States Treasury. Neither Silver Edge nor Mackle were directed to disgorge any monies to any investors in the Silver Edge Funds managed by Silver Edge. Rather, all disgorgement payments were to be designated for remittance to the U.S. Treasury. (Mackle Aff. ⁋ 6; Administrative Order at ⁋ 13.)

Notwithstanding the direction to pay disgorgement, that same Administrative Order required Respondents to retain the services of an Independent Distribution Consultant ("IDC"). Respondents did so in a timely fashion. As required by the SEC, the IDC is working to develop a written plan for distribution ("Distribution Plan") for investors in the two Silver Edge Funds. Thus, a plan of distribution to investors not only is feasible, but is mandated by the SEC. (Mackle Aff. ⁋⁋ 16-17; Administrative Order at ⁋⁋ 14, 16-19.)

The Distribution Plan is required to provide for the ultimate liquidation of the Silver Edge Fund investors' interests in the underlying Pre-IPO Shares, whether through distributions after liquidity events or sales of such Pre-IPO Shares. The resulting proceeds will be distributed to the investors in the Silver Edge Funds in accordance with a methodology acceptable to the staff of the SEC. (Mackle Aff. ⁋ 17; Administrative Order at ⁋⁋ 14, 16)

Specifically, Paragraphs 14(c)(i) and (ii) of the Administrative Order state, in relevant part, that:

> i. "The Distribution Plan shall provide for the transfer of all assets of the Silver Edge Funds to the IDC or its designee within six months of Respondents' engagement of the IDC, including without limitation the transfer of all membership interests, including those held by the Silver Edge Funds' investors, rights to underlying Pre-IPO Shares, and general assets of the Silver Edge Funds to the possession, custody or control of the IDC for distribution…
>
> ii. The Distribution Plan shall provide for investors to receive, from the monies and assets available for distribution, their proportionate share of any gains and losses, as well as the investors' interests in the portfolio of Pre-IPO Shares, whether through distributions after liquidity events or sales of the Pre-IPO Shares and distributions to investors, in accordance with the methodology set forth in the Funds' respective Private Placement Memoranda and Operating Agreement."

Moreover, the amount of disgorgement ordered by the SEC against Mackle is based on a joint and several liability, and does not reflect net profits nor moneys received directly by Mackle. (Mackle Aff. ⁋ 7; Administrative Order at ⁋ 13)

As shown in the Mackle Affidavit, Mackle has no assets or funds with which to pay disgorgement, interest or civil penalties. Mackle has been unemployed since Silver Edge went out of business, and is no longer in the securities business. Moreover, Mackle is not violating, nor intends to violate any provisions of the securities laws, much less Section 15(a) of the Exchange Act (Mackle Aff. ⁋⁋ 22-24).

## ARGUMENT

## POINT I

## THIS COURT SHOULD EXAMINE THE MERITS OF THE REQUESTED COURT ORDER AND SHOULD NOT RUBBER STAMP THE SEC'S APPLICATION

In its application, the SEC argues that, because it chose to bring this proceeding under Section 21(e) of the Exchange Act, and Section 209(d) of the Advisor's Act (collectively, "Section 21(e)"), these proceedings are "summary in nature" and the "Respondents may not challenge" the validity of the Administrative Order. SEC Application pp.4-5. The authorities cited by the SEC do not address the issues raised herein nor preclude the Court from considering the issues to deny the objected to aspects of the SEC's Application. In fact, all of the authorities cited by the SEC were decided before *Liu* and *Jarkesy*, and five of the seven cases cited involve *pro se litigants See, e.g., SEC v. Gerasimowicz*, 9 F. Supp. 3d 378 (S.D.N.Y. 2014); *SEC v. Taber*, No. 13 Misc. 282 (KBF), 2013 WL 6334375 at *2 (S.D.N.Y. 2013).[2] Those cases, and the others cited by the SEC should have little, if any, precedential value.

This Court is not required to merely "rubber stamp" the SEC's Application. *See, e.g.*, *SEC v. Citigroup Global Mkts., Inc.,* 752 F.3rd 285, 297-98 (2d Cir._ 2014); *SEC v. Gentile*, 939 F.3d 549, 565 (3d Cir. 2019); *SEC v. Caledonian Bank*, 317 F.R.D. 358, 369 (S.D.N.Y. 2016). Indeed, as more fully explained below, before this Court issues any Order as a result of the SEC's Application, the Court should make its own determination as to whether all of the relief sought by the SEC is appropriate and consistent with current law.

By this opposition, Mackle is not seeking judicial review of the Administrative Order, nor to terminate or overturn it. That Administrative Order stands for whatever it is worth. In fact, Mackle has not objected to the Court entering an Order that incorporates those portions of the

---

[2] Copies of cases not officially reported, and other authority are contained in the Compendium submitted herewith.

Administrative Order that impose a bar against association with a broker-dealer or a "penny stock ban", and appointment of an Independent Distribution Consultant ("IDC") to administer the process of making distributions to investors in the Silver Edge Funds.

Rather, Mackle makes specific objections only to certain of the judicial relief sought by the SEC's Application. In particular, for the reasons stated below in Points II-IV below, Mackle objects to this Court issuing its Order (a) granting an "obey the law" injunction against Mackle, (b) ordering Mackle to pay disgorgement, and (c) imposing civil penalties on Mackle.

First, the SEC is *not* entitled to the requested injunction since it made no attempt to demonstrate that Mackle is violating or is about to violate the securities laws. Absent such a showing, the SEC would not be entitled to an injunction under Section 27 of the Exchange Act if it had first filed its case in this Court. The SEC should not be permitted to circumvent the requirements for an injunction issued by this Court by relying solely upon an Administrative Order, which had no such requirements.

Second, the SEC is asking this Court to issue an Order compelling Mackle to pay disgorgement of $2,251,131.92, plus $268,928.33 in interest, to the U.S. Treasury, as opposed to investors in the Silver Edge Funds. Such a disgorgement order is contrary to clear dictates of the U.S. Supreme Court established by *Liu*, 591 U.S. 74, and the Second Circuit in *SEC v. Govil*, 86 F.4th 89 (2d Cir. 2023).

Third, the SEC's request that this Court enter an Order directing Mackle to pay civil penalties of $975,000 based on an order issued in an administrative proceeding when the Supreme Court has now ruled that administrative proceedings that seek civil penalties are procedurally invalid and unconstitutional. *See, Jarkesy,* 603 U.S. 109.

It is beyond peradventure that this Court has jurisdiction to hear Mackle's objections. The SEC invoked this Court's jurisdiction in order to obtain an order from this Court. As the Second Circuit explained in connection with a consent order in *SEC v. Citigroup Global Markets, Inc.* 752 F.3rd 285, 298, once the SEC seeks a court order, a district court is required to review the appropriateness of the Order:

> "But if the S.E.C. prefers to call upon the power of the courts in ordering a consent decree and issuing an injunction, then the S.E.C. must be willing to assure the court that the settlement proposed is fair and reasonable. "Consent decrees are a hybrid in the sense that they are at once both contracts and orders; they are construed largely as contracts, but are enforced as orders." *Berger v. Heckler,* 771 F.2d 1556, 1568-69 (2d Cir.1985) (citation omitted). For the courts to simply accept a proposed S.E.C. consent decree without any review would be a dereliction of the court's duty to ensure the orders it enters are proper."

As a result, once the Court's jurisdiction is invoked, the Court has the power to – and, as a matter of necessity, should – review the merits of the Order it is being asked to sign. As stated by the Fifth Circuit in *Cochran v. SEC*, 20 F. 4th 194, 199-200 (5th Cir. 2021):

> Congress gave federal district courts jurisdiction over "*all* civil actions arising under the Constitution." 28 U.S.C. § 1331 (emphases added). Not some or most—but all. . . . It is undisputed that Cochran's removal power claim arises under the Constitution. Moreover, the Supreme Court has repeatedly told us that "when a federal court has jurisdiction, it also has a 'virtually unflagging obligation … to exercise that authority.' " *Mata v. Lynch,* 576 U.S. 143, 150, 135 S.Ct. 2150, 192 L.Ed.2d 225 (2015) (ellipsis in original) (quoting *Colo. River Water Conservation Dist. V. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)); *see, e.g.*, *Quackenbush v. Allstate Ins. Co*., 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) ("We have often acknowledged that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress.")

Just like the legally deficient administrative proceeding involved in *Cochran,* Mackle's objections concern inherent flaws in the relief requested by the SEC's Application, including the unconstitutional imposition of civil penalties that implicates the Seventh Amendment. This Court clearly has jurisdiction to review and consider Mackle's objections. *See Jarkesy*, 603 U.S. at 120*; Free Enterprise Fund v. Pub. Account. Oversight Bd.,* 561 U.S. 477, 489-91 (2010).

Mackle understands that the Administrative Order was entered on consent, without admitting or denying the SEC's allegations, as a result of the Offer of Settlement[3] submitted by Mackle concurrently with the institution of the administrative proceeding.[4] The fact that there was prior consent to the Administrative Order does not inhibit the Court's obligation, before it enters an Order, to make its own determination as to whether the SEC has met its burden to obtain an injunction, or ordering disgorgement or civil penalties. See, *United States v. Swift & Co.,* 286 U.S. 106, 114-15 (1932) (a court's power to modify an injunctive remedy is "inherent in the jurisdiction of the chancery" even though the injunction "was entered by consent," the Supreme Court expressly "reject[ing] the argument … that a decree entered upon consent is to be treated as a contract and not a judicial act.")

Although the power to modify an injunction at issue in *Swift* is now "codified by Federal Rule of Civil Procedure 60, the court's power is inherent, and not displaced by the rule. [60]" *Batalla Vidal v. Mayorkas*, 618 F.Supp.3d 119, 123 (E.D.N.Y. 2022). In *NML Capital Ltd v. Republic of Argentina*, No. 15-cv-2369 (TPG), 2016 WL 715732, at *4-5 (S.D.N.Y. Feb. 19, 2016), the court addressed its inherent power to act, even when there was a prior consent, *quoting N.Y.*

---

[3] Although not mentioned in the SEC Application, Mackle's Offer of Settlement stated that he waived his right to "judicial review by any court", as required by SEC Rule of Practice 240, 17 C.F.R. § 201.240(c)(4)(v). Such a purported waiver does not preclude Mackle from opposing discrete aspects of the relief sought by the SEC's Application. Mackle does not seek judicial review of the Administrative Order. Instead, Mackle's opposition is to this Court issuing its own Order that would contravene current law as set forth in *Liu* and *Jarkesy*, and Section 27 of the Exchange Act.

[4] It should come as no surprise that Mackle and Silver Edge settled currently with the initiation of the Administrative Proceeding. That is when the SEC settles most of its cases. The 5th Circuit observed in *Cochran v. SEC*, 20 F.4th 194, 229 (5th Cir. 2021): "during the period 2002-2014 the SEC's settlement rate remained constant at about 98%", *quoting,* Gideon, Mark. *SEC and CFTC Administrative Proceedings*, 19 U. Pa. J. Const. L. 45, 57 (2016). Similar statistics show consistent results since 2012. *See*, SEC Enforcement Activity: Public Companies and Subsidiaries, Fiscal Year 2024 Update, published by Cornerstone Research (Compendium Tab 14) (between October 1, 2009 and September 30, 2024, the SEC brought 993 Enforcement Actions against public companies alone and in 2024 96% of those actions were settled with concurrent resolutions). While the SEC touts the large amounts of disgorgement and civil penalties mentioned in settlements, the Wall Street Journal reported on December 31, 2024 that over the past 10 years, the SEC has written off almost $10 billion in penalties. (Compendium Tab 15)

*States Ass'n of Retarded Children, Inc v. Carey*, 706 F.2d 956, 967 (2d Cir. 1983), and pronounced that: "the power of a court of equity to modify a decree of injunctive relief is long-established, broad, and flexible." *Id.*

Thus, Rule 60(b) did not displace a court's equitable powers to issue, modify or vacate its own orders, even when there is prior consent, and *Swift* remains good law. *See, Agostini v. Felton*, 521 U.S. 203, 215 (1997) (injunction agreed to by the parties becomes a judicial act and must be vacated when subsequent Supreme Court rulings on the subject matter have undermined the legal predicate for the original relief); *Rufo v. Inmates of Suffolk Cnty Jail,* 502 U.S. 367, 378, n. 12, (1992) (agreed upon injunction is "contractual in nature" and "enforceable as a judicial decree that is subject to the rules generally applicable to other judgments and decrees").

Therefore, before this Cout enters any Order based on the SEC's Application, it should be satisfied that such an Order is appropriate and consistent with current law and the SEC's statutory authority. As shown below, the Order requested by the SEC does not satisfy certain material respects of current law or statutory authority. A district court should not sanction, and in appropriate courts the court should vacate, agreed-to remedies that are unauthorized as a result of changes in the statutory or decisional law. *See, e.g.*, *Cooper v. Texas* Alcoholic *Beverage Comm'n*, 820 F.3d 730, 741 (5th Cir. 2016) (once "[t]he party seeking relief ... establish[es] that changed [facts or law] warrant relief ... a court abuses its discretion when it refuses to modify an injunction or consent decree in light of such changes"); *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 436 (5th Cir. 2011) (district court obligation to vacate or modify an equitable remedy is unaffected by fact that the remedy had been agreed to by the parties).

Moreover, the issuance of an injunction and an order of disgorgement are equitable remedies. The law is clear that parties may not, by consent and agreement, confer power on the

court to impose unauthorized equitable remedies. In *Sys. Fed'n v. Wright*, 364 U.S. 642, 645 (1961), the district court had refused to modify an agreed judgment despite a change in the law just because the parties had agreed to the equitable relief in the first place. The Supreme Court held this was an abuse of discretion, explaining that "[t]he parties cannot, by giving each other consideration, purchase from a court of equity a continuing injunction ... [because a] Court's authority to adopt a consent decree comes only from the statute which the decree is intended to enforce." *Id.* at 651. The Supreme Court continued: "The parties could not become the conscience of the equity court and decide for it once and for all what was equitable and what was not, because the court was not acting to enforce a promise but to enforce a statute." *Id.* at 652-53.

This is precisely the situation here. The SEC has no statutory authority to obtain a Court Order that imposes an injunction against Mackle in the absence of showing that he is violating or about to violate the securities laws. The SEC Application also seeks relief in the form of disgorgement and civil penalties that contravenes current law as established by the Supreme Court's rulings in *Liu* and *Jarkesy*, respectively.

In light of the SEC's imposition of disgorgement, in a manner and amount inconsistent with *Liu*, and civil penalties as a result of a flawed administrative process inconsistent with *Jarkesy*, the SEC's settlement with Mackle should not be used by this Court in exercising its discretion whether to order Mackle to pay disgorgement and civil penalties. *See, Nat'l Revenue Corp. v. Violet,* 807 F.2d 285, 288 (1st Cir. 1986) (holding that consent judgment invalidating state statute on the basis of an agreement between corporation and Rhode Island Attorney General was "void on its face" because attorney general "h[ad] no authority to be the binding determiner that legislation is unconstitutional"); *Total Med. Mgmt. v. U.S.*,104 F.3d 1314, 1321 (Fed. Cir. 1997) (concluding that government contract was void because it violated applicable regulations); *Frillz,*



{1754317.1 }

*Inc. v. Lader,* 925 F. Supp. 83, 88 (D.Mass. 1996) (stating that a federal agency is only empowered to act within the statutory guidelines and any action exceeding its statutory authority is void), *aff'd*, 104 F.3rd 515 (1st Cir. 1997).

In a variety of circumstances, courts have declined to grant SEC applications under Section 21(e). For example, in *SEC v. Coronati*, 16-cv-2022(ARR), 2016 WL 6462240, at *3 (E.D.N.Y. Oct. 14, 2016), although the court rejected a challenge to the overall "validity of the Consent Order " at issue – which Mackle is not challenging here – the court reviewed the disgorgement amounts imposed by the SEC under the preceding consent order. The court in *Coronati* stated that: "District courts are accorded broad discretion in calculating disgorgement amounts associated with securities law violations." *Id.* A similar exercise of this Court's discretion is warranted in this case to review the SEC's disgorgement calculation for compliance with current law.

In *SEC v. Craig Scott Capital LLC*, 16-cv-4757 (SJF)(AYS), 2020 WL 435 034, at *3-4 (E.D.N.Y. Jan. 28, 2020), the Court denied the SEC's motion to reconsider its denial of the SEC's application under Section 21(e) on the grounds that the SEC did not act promptly or comply with court deadlines. Likewise, in *SEC v. Hold Bros. On-Line Inv. Servs.*, LLC, 216 F. Supp. 3d 425, 426 (D.N.J. 2016), the court denied the SEC's Section 21(e) application seeking to enforce compliance with a consent order against certain individuals associated with a broker-dealer.

Based on the foregoing, Mackle submits that this Court unquestionably has jurisdiction to hear the merits of his objections to its entry of three portions of the Order requested by the SEC – namely (1) the injunction without any showing that Mackle is or is about to violate the law; (2) an order of disgorgement requiring remittances to the U.S. Treasury instead of any victims of his alleged wrongdoing, especially when an independent distribution consultant already has been appointed to liquidate and disburse all of the assets of Silver Edge Funds to the investors, and for moneys that Mackle did not personally receive and in an amount that fails to take into account "net

profits"; and (3) an order imposing civil penalties as determined by the SEC administrative order that was the result of a constitutionally flawed administrative process. Once the Court exercises that jurisdiction, for the reasons set forth below, it should deny the objected-to portions of the SEC's Application.

## POINT II

## THE SEC HAS NOT SHOWN AN ENTITLEMENT TO AN INJUNCTION AGAINST MACKLE

There is no dispute that the SEC has, as one of its basic remedies, the ability to apply to seek an injunction to prevent future violations. Indeed, Section 27 of the Exchange Act, § 78u(d)(1), states:

> Whenever it shall appear to the Commission that any person is engaged or is about to engage in acts or practices constituting a violation of any provision of this chapter, [or] the rules or regulations thereunder ... it may in its discretion bring an action in [district court] to enjoin such acts or practices, and upon a proper showing a permanent or temporary injunction or restraining order shall be granted without bond.

As is apparent from the statute, the SEC's ability to obtain an injunction requires a showing that the person against whom the injunction is sought "is engaged or is about to engage in acts or practices constituting a violation of any provision of this chapter, [or] the rules and regulations thereunder…" (emphasis added). Where the SEC cannot show that the defendant is or is about to engage in a violation, an injunction will not be granted. *See, e.g.*, *SEC v. Morningstar Credit Ratings, LLC*, 578 F.Supp.3d 563, 576-577 (S.D.N.Y. 2022) (no reasonable likelihood that defendant is or is about to violate securities law); *SEC v. Wheeler*, 56 F. Supp.3d 241 (W.D.N.Y. 2014) (same); *SEC v. Wellshire Securities, Inc.*, 773 F. Supp. 569 (S.D.N.Y. 1991) (same); *SEC v. Miller*, 495 F. Supp. 465, 484 (S.D.N.Y. 1980) (defendant is no longer active and SEC did not show that he had any intention to resume his activity in any securities market).

The SEC's Application made no effort to show that Mackle is engaged or is about to engage in acts or practices constituting a violation of any statute, rule or regulation. In fact, the SEC's Application does not discuss the merits of its request that this Court issue an injunction, other than to attach the SEC's Administrative Order. The Administrative Order contains a requirement that Mackle: "cease and desist from committing or causing any violation and any future violations Section 15(a) of the Exchange Act" (the "Cease and Desist Restrictions").

Any injunction based on such a Cease and Desist Restriction is commonly is referred to as an "obey the law" injunction, because it would only require Mackle to not engage in future violations of a particular statute, *i.e.*, Section 15(a), or face potential criminal liability for contempt of a court order if he does. Just like a typical injunction, this is a judicial order "to refrain from doing a particular thing .... which operates as a restraint upon the party in the exercise of his real or supposed rights." *Gentile*, 939 F.3d at 555. *See, SEC v. Smyth*, 420 F.3rd 1225, 1233 n.14 (11th Cir. 2005) (in *dicta*, court stated that an SEC obey the law injunction "is not enforceable").

Many courts have held that, before it issues an "obey the law" injunction, the court should not simply rubber stamp the SEC's request, but should exercise its equitable discretion to decide if an injunction would prevent "future violations of securities laws." *See*, *e.g.*, *SEC v. Gentile*, *supra*, 939 F.3rd at 565.

The *Gentile* Court stated that an obey-the-law injunction:

> "could not fairly be said solely to serve a remedial purpose…[b]ut [rather] a properly issued and framed injunction is fairly so described, because its sole function ... is to forestall future violations… Nothing in either provision [of § 78u(d)(1) and (6)] … suggests Congress meant to depart from the rule that injunctions are issued to prevent harm rather than to punish past wrongdoing."…
>
> That an injunction is permissible only where necessary to prevent ... misconduct from occurring in the future, and not merely to punish past transgressions, is a standard to which



{1754317.1 }

> the SEC must also hold itself… [F]ederal courts may not grant SEC injunctions except upon a proper showing of the likelihood of future harm.
>
> We stress that the District Court, on remand, should not rubber-stamp the Commission's request for an obey-the-law injunction…If the District Court, after weighing the facts and circumstances of this case as alleged or otherwise, concludes that the obey-the-law injunction sought here serves no preventive purpose, or is not carefully tailored to enjoin only that conduct necessary to prevent a future harm, then it should, and must, reject the Commission's request…"
>
> *Id*. at 556-565.

That is precisely the situation here. The SEC has not made a showing that Mackle is or is about to violate Section 15(a), or that there is any likelihood of future violations by him. Mackle's company, Silver Edge, is out of business and the assets of Silver Edge, including any "carried interest" it may receive, now belongs to the IDC. The pre-IPO Funds managed by Silver Edge are being liquidated by the IDC, and the resulting proceeds will be distributed to the investors in the Silver Edge Funds. Mackle has been barred from association with any broker or dealer, is no longer in the securities business, and is subject to a penny stock ban. *See, Morningstar,* 578 F. Supp. 3d at 576. In fact, Mackle has sworn under oath that he has no intention of engaging in the securities business and that he is not violating and will not in the future violate Section 15(a) of the Exchange Act or the Cease and Desist Restriction. (*See*, Mackle Aff. ¶¶).

Moreover, the requested injunction to prohibit Mackle from violating Section 15(a) of the Exchange Act in the future does not set forth the specific conduct prohibited. Section 15(a) requires registration as a broker-dealer if a person engages in certain conduct. The issue of what conduct requires registration under Section 15(a) is complex and fact intensive. As stated in *SEC v. Kramer*, 778 F.Supp.2d 1320, 1334 (M.D. Fla. 2011), "[b]ecause the Exchange Act defines neither 'effecting transactions' nor 'engag[ing] in the business,' an array of factors determines whether a person is engaged in conduct that requires registration as a broker under Section 15(a). *See also*, *DeHuff v. Digital Ally, Inc.*, No. 3:08 CV 327 TSL-JCS, 2009 WL 4908581, *3 (S.D. Miss. 2009)".

*See*, *SEC v. Carebourn Capital*, *L.P.*, No. 21-cv-2114 (KMM/JFD), 2024 WL 424956, at * 6 (D.Minn. Sept. 20, 2024) (analyzing whether conduct violated Section 15(a)); *SEC v. Hansen*, No. 83 civ. 3692, 1983 WL 2413, at *10 (S.D.N.Y. Apr. 6, 1984) (setting forth factors to be considered). Notably, these factors are not intended to be exclusive. *Kramer*, 778 F. Supp. 2d at 1334; *SEC v. Benger,* 697 F. Supp. 2d 932, 945 (N.D. Ill.2010). And, on occasion, the SEC's allegations that there was a Section 15(a) violation is rejected by a court. *See, e.g., SEC v. M&A West, Inc.,* No. C-01-3376 VRW, 2005 WL 151401, at *9-10 (N.D. Cal. 2005) (conduct alleged by SEC did not amount to broker activity).

In *SEC v. Goble*, 682 F.3d 934 (11th Cir. 2012), the court considered whether an "obey the law" injunction sought by the SEC was impermissible because it would violate the specificity requirements of F.R.P.C. Rule 65(d). *Goble* concluded that: "we emphasize that an injunction prohibiting violations of the securities regulations must comply with F.R.P.C. Rule 65(d)." *Id.* at 952. *Goble* held that merely cross-referencing the relevant statute was insufficient, in ruling that: "We have said that "[a] person enjoined by court order should only be required to look within the four corners of the injunction to determine what he must do or refrain from doing," *Id*. at 952, *citing Hughley v. JMS Dev. Corp.*, 78 F.3d 1523, 1532 n. 12." (11th Cir. 1996).

Here, too, the requested injunction is vague, does not specify the conduct prohibited and does not comply with F.R.P.C. Rule § 65(d).[5] In this case, as in *Goble,* "Plainly [Mackle] would need to look beyond the four corners of the district court's injunction in order to comply with its strictures. The mere cross-reference to provisions of [Section 15(a)] does not specifically describe the acts addressed by the injunction. And, without a compendious knowledge of the codes,

[5] In the context of an SEC Application seeking entry of a final order of injunction, the SEC cannot merely incorporate by reference the preceding consent order, but rather must include and reiterate the provisions of the order. *See, S.E.C. v. Hohol*, No. 14-C-41, 2014 WL 461217, at *2 (E.D. Wis. Feb. 5, 2014).

[Mackle] has no way of understanding his obligations under the injunction…." *Goble,* 682 F.3rd at 953. Accordingly, the SEC's request for a vague "obey the law" injunction should be denied.

## POINT III

## THIS COURT SHOULD NOT ORDER DISGORGEMENT IN AMOUNT AND MANNER CONTRARY TO LIU

In *Liu v. SEC*, 591 U.S. 71, 74 (2020), the Supreme Court recognized that, while the SEC may seek disgorgement in enforcement cases, any disgorgement remedies are subject to certain "traditional equitable limitations."[6] These three longstanding principles of equity are: (1) a defendant's gains should be returned to investors for their benefit, not to the U.S. Treasury, unless a distribution to investors is infeasible; (2) the disgorgement order should not extend to several wrongdoers under a joint-and-several liability theory; and (3) the amount of disgorgement should not exceed the net profits from wrongdoing after deducting legitimate expenses.

Subsequent to the *Liu* decision, the Exchange Act was amended to specifically provide that the SEC may seek disgorgement in an enforcement action. Congress enacted § 78u(d)(7) to give the SEC the power to "seek" and federal courts the power to "order" the remedy of "disgorgement." 15 U.S.C. § 78u(d)(7). *SEC v. Govil,* 86 F.4th 89, 100 (2d Cir. 2023); *SEC v. Ahmed*, 72 F.4th 379, 396 (2d Cir. 2023).

In *Govil*, the Second Circuit, relying on *Ahmed*, held that the amendment granting the SEC power to seek disgorgement did not change the equitable principles required for SEC disgorgement set forth in *Liu,* stating:

[6] In *Kokesh v. SEC,* 581 U.S. 455 (2017), the Supreme Court concluded that "SEC disgorgement constitutes a penalty". *See also*, *SEC v. Cohen*, 332 F. Supp. 3d 575, 593 (E.D.N.Y. 2018) (because SEC disgorgement went " 'beyond compensation, [and is] intended to punish and label defendants wrongdoers' as a consequence of violating public laws," it was a penalty).

> We held that "Liu's equitable limitations on disgorgement survive the NDAA" and therefore "[w]e read 'disgorgement' in § 78u(d)(7) to refer to equitable disgorgement as recognized in *Liu*." *Ahmed,* 72 F.4th at 395. In short, "disgorgement under § 78u(d)(7) must comport with traditional equitable limitations as recognized in *Liu*." *Id.* at 396. Based on our precedent, disgorgement under both § 78u(d)(5), and § 78u(d)(7) are constrained by *Liu*.

*Govil*, 86 F.4th at 100.

If the SEC had first brought an action against Mackle in this Court seeking disgorgement, under *Liu* and *Govil,* this Court could not have granted disgorgement to be paid to the U.S. Treasury, or in the amount sought by the SEC. The SEC should not be permitted to use a back door to circumvent these equitable requirements by enforcing an Administrative Order which imposed disgorgement in violation of all three equitable principles required by *Liu* and *Govil*.

*First*, the SEC seeks to compel Mackle to pay disgorgement to the U.S. Treasury, as opposed to paying investors in the Silver Edge Funds. As stated in *Govil*, "*Liu* establishes that disgorgement must be 'awarded to victims' to qualify as equitable relief. *Liu*, 149 S.Ct., at 1940." *Govil*, 84 F.4th at 94. *Liu* left open the question of whether "depositing disgorgement funds with the Treasury when it is infeasible to remit them to investors is consistent with the limitations of Section 78u(d)(5)." *SEC v. Herman's World of Sports, Inc.,* No. 05-cv-00438 (KAM)(RLM), 2024 WL 490 4506, at *2 (EDNY 2014), *quoting SEC v. Laura,* No. 18-cv-5075 (NGG) (VMS), 2020 WL 8772252*,* at *4 (E.D.N.Y. Dec. 30, 2020).

Just last November, in *Herman's World*, 2024 WL 4904506 at *2, the court found that the SEC had not yet determined that distribution to investors was infeasible. Therefore, the court did not require disgorgement to be paid to the Treasury as requested by the SEC. *Id. See also*, *Govil*, 84 F.4th at n.7 ("Thus the parties agree that the judgment must be vacated to the extent that it directs the proceeds of disgorgement to the Treasury.")



{1754317.1 }

Here, the situation is much clearer than in *Herman's World.* Not only is the feasibility of distribution to investors possible, but there already is an existing procedure in place for such distribution. The Administrative Order requires an undertaking from Mackle and Silver Edge to appoint an IDC -- which has been done. Under the Administrative Order, the IDC must create a plan for distributing the assets of the Silver Edge Funds to the investors in those funds. Mackle does not challenge that portion of the Administrative Order, and Silver Edge has consented to a Court Order to enforce this provision of the Administrative Order only. Thus, if this Court were to order disgorgement by Mackle in any amount, it should find that it is feasible to return funds to investors. Once the Court makes such a finding, the Court should further provide in such Order that *any* disgorged funds by Mackle be paid to the IDC for distribution to the Silver Edge Funds investors, and not to the U.S. Treasury, so as to conform to the requirements of *Liu* and *Herman's World*.

Nevertheless, Mackle submits that this Court, in its discretion, should not require him to make disgorgement in any amount. *See SEC v. Coronati*, 2016 WL 6462240 at *3. *First*, the SEC has made no effort to allege that there were any investors who lost money as a consequence of the violations enumerated in the Administrative Order. In *Govil*, even though Govil had entered into a consent agreement with the SEC, the Second Circuit held that the district court abused its discretion in ordering disgorgement because there was no evidence investors suffered any pecuniary harm and the disgorgement was not to be returned to investors. *Govil*, 86 F.4th at 94. Similarly, in *SEC v. Ripple Labs*, Inc., No. 20 CIV. 10832 (AT), 2024 WL 3730403 (S.D.N.Y. Aug. 7, 2024). Judge Torres recently denied the SEC's motion for disgorgement of the defendant's profits from certain sales because there was no victim who suffered pecuniary harm, and any disgorgement ordered by the Court would not be returned to any such victim. *Id.* at *7.

The same is true here. The SEC's Application has not alleged, much less established, that any of the investors in the Silver Edge funds lost money.

*Second*, the disgorgement amount in the Administrative Order was based on the gross amount of management fees received by Silver Edge. (Mackle Aff. ¶ 7). None of those management fees were paid to, or received by Mackle directly, but were paid only to Silver Edge. (*Id* at ¶ 7) Therefore, the only basis for Mackle to be required to disgorge the amount of management fees is if he was jointly and severally liable with Silver Edge. In fact, the Administrative Order does just that. It imposes joint and several liability in the amount of the management fees upon Mackle and Silver Edge. Under the second equitable principle of *Liu*, disgorgement cannot be extended by joint-and-several liability. 591 U.S. at 87. Accordingly, Mackle should not be liable for disgorgement of monies received by Silver Edge, especially when Silver Edge has agreed to disgorgement in the full amount sought by the SEC, and an IDC has been appointed.

*Third*, the disgorgement amount in the Administrative Order was based upon the gross amount of management fees received by Silver Edge, not "net profits". No deduction was made for any expenses or costs. (Mackle Aff. ¶ 7) That calculation violates the third equitable principle established by *Liu, Id*. at 87. Thus, the amount that the Administrative Order required Mackle to disgorge exceeded the net profits from the alleged wrongdoing without deducting legitimate expenses, as prohibited by *Liu*. *Id.*

Further, Mackle has submitted an affidavit which demonstrates that he does not have any assets to pay any substantial disgorgement. *See,* Mackle Aff. ¶¶ 10-15. As shown below, courts have considered a defendant's financial condition in determining the amount of any civil penalty. Mackle submits that the same consideration to his financial condition should be given if the

Court exercises its discretion to set the amount of disgorgement against him. *See, SEC v. Hohol,* 2014 WL 461217, at *2 (E.D. Wis. Feb. 5, 2014).

In light of the foregoing, this Court should not issue the order requested by the SEC directing Mackle to pay to the U.S. Treasury disgorgement of $2,251,131.92, plus prejudgment interest of $268,928.33, based on the amount in the Administrative Order. Distribution to investors not only is feasible, but required by that same Administrative Order. Moreover, the amount of disgorgement requested by the SEC is not the proper amount of disgorgement under *Liu*. If the Court nevertheless decides, in its discretion, to issue an Order that requires Mackle to disgorge any money, the Court should consider his financial condition and inability to pay.

## POINT IV

## **THIS COURT SHOULD NOT ORDER MACKLE TO PAY CIVIL PENALTIES ORDERED AS A RESULT OF THE SEC ADMINISTRATIVE PROCEEDING**

On June 27, 2024, in *SEC v. Jarkesy*, 603 U.S. 109 (2024), the Supreme Court found that the SEC's administrative proceedings that imposed civil penalties violated the defendant's right to a jury trial under the Seventh Amendment. *See, Elgebaly v. Garland*, 109 F.4th 426, 437 (6th Cir. 2024) (*Jarkesy* held that "enforcement proceedings in the SEC that sought civil penalties violated defendants' Seventh Amendment right to a jury trial." This is because "the SEC enforcement proceedings at issue affected the private rights of defendants, meaning adjudication could not be removed from an Article III court." *Id*.)

Specifically, in *Jarkesy*, the Supreme Court held that the Seventh Amendment right to a jury trial applied to all common law claims that are legal in nature, *i.e.,* any claims that do not sound in equity, maritime or admiralty law. The Supreme Court stated that, to determine whether a claim is legal in nature, a court should consider whether the claim resembles a common law

cause of action and whether the remedy is the kind of remedy traditionally obtained in a court of law. The Supreme Court found that securities fraud was similar to common law fraud and that civil monetary penalties were a typical common law remedy because their purpose was to punish and deter, not to restore the status quo. *Id*. at 123.

The Supreme Court in *Jarkesy* noted that the Seventh Amendment right to a jury trial is subject to a public rights exception, which allows Congress to assign certain matters to an agency rather than a jury. *Id.* at 127. But, the public rights exception is limited and applies only in areas traditionally determined by the executive and legislative branches as involving public benefits. The Supreme Court held that the exception did not apply to securities violations because the matter did not "fall within any of the distinctive areas involving governmental prerogatives where the Court has concluded that a matter may be resolved outside of an Article III court, without a jury." *Id.* at 120. Thus, the public rights exception does not apply to claims alleging securities violations which are legal in nature and involve private rights.

*Jarkesy* was decided on June 24, 2024. We have not yet found any cases that applied *Jarkesy* in the context of a Section 21(e) Application. However, Mackle submits that *Jarkesy* can only mean that the Seventh Amendment applies to any administrative proceeding in which the SEC seeks monetary civil penalties. Under *Jarkesy*, the Court is required to look at the remedy requested to determine if it is legal in nature — here, civil penalties. *See, Nexstar Media, Inc. Grp. v. NLRB*, No. 4:12-cv-01415, 2024 WL 4127090, at *4 (N.D. Ohio 2024), *quoting Jarkesy*, 603 U.S. at 123 (The remedy is the important consideration. "A remedy is legal in nature when it is designed to punish or deter the wrongdoer rather than solely to restore the status quo.")

Thus, the remedy of a civil penalty imposed by the SEC against Mackle is legal in nature and involved private rights. Accordingly, the SEC in-house administrative proceeding that

required Mackle to pay at civil penalty was fatally flawed and should not be used as a basis for this Court to require Mackle to pay civil penalties of $975,000. Based on the foregoing, the Court should deny that portion of the SEC's Application that seeks a civil penalty of $975,000 based on the Administrative Order.

It is up to the Court's discretion whether to impose any civil penalty, and, if so, the amount thereof. *Ripple,* 2024 WL 3730403*,* at *7; *Carebourn Capital*, 2024 WL4249546 at *14. Even if this Court were to determine that it would impose some amount of civil penalty on Mackle, it should not merely rubber stamp the SEC's demand for a civil penalty of $975,000. As recently stated in *Ripple*,

> "[c]ourts can impose penalties in civil injunctive actions not to exceed the greater of: (i) the gross pecuniary gain to a defendant as a result of the violation, or (ii) a specified amount per violation, depending on whether the violation falls in the first, second[,] or third penalty tier. …A court may impose a first-tier penalty for any violation of the Exchange or Securities Acts; a second-tier penalty if the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement"; and a third-tier penalty if, in addition to meeting the second-tier requirements, the "violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." *Id.* (citations omitted).

As in *Ripple*, only a first-tier penalty is appropriate against Mackle because there was no allegation of "fraud, deceit, [or] manipulation" and no established "deliberate or reckless disregard of a regulatory requirement." *Id*. at *8, 15 U.S.C. § 77t(d)(2)(b). *See also*, *Carebourn Capital*, at *14. As noted, Mackle was accused solely of failing to register Silver Edge as a broker-dealer — not of fraudulent conduct.

The Second Circuit has set forth five factors for district courts to consider when setting the amount of civil penalties. *SEC v. Rajaratnam*, 918 F. 3d 36, 44 (2d Cir. 2019); *Ripple* at *7. As relevant here, the third factor is whether the defendant's conduct created substantial loss to investors. As in *Ripple,* the SEC has not established that Mackle's failure to register as a broker-dealer caused substantial losses to investors. *Ripple*, 2024 WL 3730403, at *8. Indeed, as noted

above with respect to disgorgement, the SEC has not claimed, much less established, any loss by investors. When the IDC executes its distribution plan as required by the SEC, it may show no investor loss, and the SEC may never establish any such loss.

The fifth factor is whether the penalty should be reduced due to the defendant's current and likely future financial condition. Here, unlike *Ripple*, Mackle has demonstrated that his current financial condition merits a reduced penalty or no penalty at all. (Mackle Aff. ⁋⁋ 10-15) When the SEC sends its standard detailed financial affidavit to Mackle, which he already has requested (Mackle Aff. ⁋ 11), Mackle will further establish the details of his current financial condition. *See*, *SEC v. Hohol*, 2014 WL 461217 at *2 (civil penalties reduced in light of financial condition). In sum, the Court should exercise its discretion and impose no civil penalty on Mackle. See, *Carebourn,* 2024 WL4249546 at *15; *Hohol*, 2014 WL 461217 at *2.

## CONCLUSION

Based on the foregoing, Mackle respectfully requests that this Court deny those portions of the SEC Application that seeks to impose an "obey the law" injunction against him and an order requiring Mackle to pay disgorgement of $2,251,131.92, plus prejudgment interest of $268,928.33, to the U.S. Treasury, or any other amount, and civil penalties of $975,000, or any other amount.

Dated: New York, New York
January 14, 2025

Of Counsel: Jason Diener, Esq.

Respectfully submitted,
Warshaw Burstein, LLP

By: /s/ Martin S. Siegel
Martin S. Siegel (MS 9490)

575 Lexington Avenue
New York, New York 10022
(212) 984-7700

*Attorneys for Defendants/Respondents*
Daniel J. Mackle, Sr. and Silver Edge Financial, LLC



{1754317.1 }